30 A.3d 914

Mark DENISYUK

v.

STATE of Maryland.

No. 45, Sept. Term, 2010.

Court of Appeals of Maryland.

Oct. 25, 2011.

Brian L. Zavin, Assistant Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Mary Ann Ince, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, *MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

The Sixth Amendment to the United States Constitution grants to criminal defendants, among other rights, the right to the effective assistance of defense counsel. *McMann v. Rich-*

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

*ardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). We consider in this case whether Petitioner, Mark Denisyuk, a noncitizen[1] who in 2006 pleaded guilty to a deportable offense, is entitled to postconviction relief based on the claim that his defense counsel was constitutionally ineffective by failing to notify him of the deportation risks of his guilty plea. The answer to the issue posed is governed to a great extent by *Padilla v. Kentucky,* 559 U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). In *Padilla,* the Supreme Court held that it is ineffective assistance to misadvise, or fail altogether to advise, a client that deportation[2] is a likely consequence of the guilty plea. *Id.* at ——, 130 S.Ct. at 1483. The central question to be decided in this case is whether *Padilla* applies to Petitioner's collateral challenge to his conviction, and, if so, whether he has demonstrated that he was prejudiced by counsel's failure to provide proper advice concerning immigration consequences.

For the reasons that follow, we hold that *Padilla* applies to postconviction claims arising from guilty pleas obtained after the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 (effective April 1, 1997), and, applying *Padilla* to the plea at issue here, defense counsel's failure to advise Petitioner of the deportation consequence of his guilty plea was constitutionally deficient. We further hold, based on the record developed at the postconviction hearing and the court's express finding on the subject, that counsel's deficient performance prejudiced Petitioner. He therefore is entitled to the requested relief of vacation of the plea and a new trial.

---

**1.** The Supreme Court, in *Padilla v. Kentucky,* 559 U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), uses the term "noncitizen" and we adopt its use here.

**2.** The Supreme Court noted in *Padilla* that "changes to our immigration law have also involved a change in nomenclature; the statutory text now uses the term 'removal' rather than 'deportation.'" *Padilla,* 559 U.S. at ——, 130 S.Ct. at 1480 n. 6 (internal citation omitted). Given that the *Padilla* Court used the term "deportation," we have opted to use the same term in this opinion.

## I.

On November 2, 2006, in the Circuit Court for Harford County, Petitioner pleaded guilty pursuant to a binding plea agreement to the charge of second degree assault, in return for a sentence of 10 years of incarceration, with all but two years suspended. At that proceeding, the court engaged Petitioner in a colloquy to ensure that the plea was knowing and voluntary. The State then recited the factual basis for the plea and the court accepted the plea. At a subsequent hearing on December 7, 2006, the court imposed the sentence agreed upon, and included three years of supervised probation. The record of the plea hearing reflects that Petitioner was not advised by defense counsel, the court, or the State, of the immigration consequences of the plea. At the time of the conviction, Petitioner was a 31–year–old Latvian citizen who immigrated to the United States at the age of fourteen. As a result of the conviction, Petitioner is facing deportation.

Petitioner did not file an application for leave to appeal the guilty plea conviction. On October 15, 2007, he filed, through counsel, a Petition for Post–Conviction Relief, seeking vacation of the conviction and a new trial. Petitioner asserted two grounds in support of the petition: (1) the plea was rendered involuntary by the omission of advice concerning the potential immigration consequences of the plea; and (2) the failure of defense counsel to advise him of those potential consequences of his conviction constituted ineffective assistance of counsel in violation of the Sixth Amendment.

Petitioner was unable to be present at the hearing on the petition.[3] He therefore submitted an affidavit to the postconviction court in which he swore that he would have rejected the plea offer and gone to trial had he been made aware of the immigration consequences of the plea. Petitioner wrote:

---

**3.** Counsel explained at the postconviction hearing that he tried, without success, to obtain from the Harford County Circuit Court a writ to obtain custody of Petitioner, who is currently incarcerated under a federal detainer.

In light of the fact that neither my counsel, nor the prosecutor, nor the judge advised me that I could be deported, I had no idea that the guilty plea would not only result in my being incarcerated, but that a direct consequence of that guilty plea would result in the filing of deportation proceedings against me.

\*   \*   \*

Had I been aware of the aformentioned immigration consequences I now face, including an order or [sic] deportation, I never would have proceeded in the manner I did, rather, I would have exercised my right to a court or jury trial and any other right or defense which would have prevented the entry of a conviction for a deportable offense.

The postconviction court granted Petitioner relief in the form of a new trial, based on Petitioner's ineffective-counsel claim. The court, aware of the standard for identifying ineffective assistance of counsel in the guilty-plea context, *see Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), found that defense counsel's failure to advise Petitioner of the immigration consequences of his guilty plea fell below the range of conduct expected of reasonable defense counsel, and Petitioner was prejudiced thereby. With regard to the latter, the court relied on Petitioner's uncontroverted affidavit testimony that "but for trial counsel's conduct he would not have pled guilty and would have proceeded to trial."

The State filed an application for leave to appeal the grant of postconviction relief.[4] The Court of Special Appeals granted the petition on February 9, 2009, set the case on its regular appeal docket, and, in a reported decision, *State v. Denisyuk,* 191 Md.App. 408, 461, 991 A.2d 1275, 1306 (2010), reversed the grant of postconviction relief. Citing caselaw from Maryland

---

4. The postconviction court, though granting Petitioner relief on the basis of his argument that defense counsel had been ineffective, ruled against Petitioner on his claim that the guilty plea was unknowing and involuntary. Petitioner did not seek appellate review of that ruling.

and elsewhere, the intermediate appellate court reasoned that the "line that has historically been drawn between advice as to the consequences of a guilty plea that is constitutionally required and advice as to other consequences that is not constitutionally required, no matter how valuable such advice might be, is the line that separates direct consequences from collateral consequences." *Id.* at 437, 991 A.2d at 1292. The Court followed decisions of federal courts of appeal in concluding that deportation is a collateral consequence of a criminal conviction and therefore does not fall within the scope of the Sixth Amendment's guarantee of effective assistance of counsel. *Id.* at 451–61, 991 A.2d at 1300–05. The Court of Special Appeals held: "The Sixth Amendment does not impose on a lawyer a duty to inform a client contemplating a guilty plea about collateral consequences generally or the risk of deportation specifically." *Id.* at 460–61, 991 A.2d at 1305.

The decision of the Court of Special Appeals pre-dates by two days the Supreme Court's decision in *Padilla.* The *Padilla* Court rejected as "ill-suited" the distinction between consequences of a guilty plea that are "direct" and those that are "collateral" insofar as immigration consequences are concerned, and the Court held that the Sixth Amendment right to effective assistance of counsel requires defense counsel to notify his or her client of the deportation consequences of the guilty plea. 559 U.S. at ——, 130 S.Ct. at 1482.

We granted a writ of certiorari to address the following questions presented by Petitioner:

1. In light of the Supreme Court's decision in *Padilla v. Kentucky,* [559] U.S. ——, [130 S.Ct. 1473] (filed March 31, 2010) [ (2010) ], did the Court of Special Appeals err in holding that defense counsel can never be ineffective for failing to advise his or her client of the immigration consequences of a guilty plea?

2. Is Petitioner, a Latvian immigrant, entitled to postconviction relief as a result of his attorney's failure to inform him of the immigration consequences of his plea?

## II.

█ The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The Sixth Amendment right to counsel is only realized, though, if defense counsel provides "*effective* assistance of counsel." *McMann*, 397 U.S. at 771 n. 14, 90 S.Ct. 1441 (emphasis added).

█ In *Strickland*, the Supreme Court set forth a two-pronged test to determine whether a criminal defendant is entitled to relief as a result of constitutionally deficient representation. "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687, 104 S.Ct. 2052. To satisfy the first prong of *Strickland*, a defendant "must show that counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. The Court explained: "Prevailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable, but they are only guides." *Id.* (citation omitted). To satisfy the second prong of *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

█ "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill*, 474 U.S. at 58, 106 S.Ct. 366. In the guilty plea context, the prejudice prong of *Strickland* is established if there "is a reasonable probability that, but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366; *accord Premo v. Moore*, 562 U.S. ——, ——, 131 S.Ct. 733, 744, 178 L.Ed.2d 649 (2011) (explaining that the prejudice inquiry "is whether [the defendant] established the reasonable

probability that he would not have entered his plea but for his counsel's deficiency"); *Yoswick v. State*, 347 Md. 228, 245, 700 A.2d 251, 259 (1997) (explaining that, under *Hill*, the defendant who has pleaded guilty and claims ineffectiveness of counsel in connection with the plea "must show that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). If a defendant satisfies both prongs of the *Strickland* test, then "the Constitution requires that a criminal judgment be overturned because of the actual ineffective assistance of counsel." *Strickland*, 466 U.S. at 684, 104 S.Ct. 2052.

Whether Petitioner is entitled to relief by application of the *Strickland* test to his claim of ineffective assistance of counsel ultimately depends, in part at least, on whether he is entitled to the benefit of the *Padilla* decision. The State, though recognizing the import of *Padilla* on current and future cases,[5] argues that Petitioner is not entitled to the benefit of its holding. The State reasons that the *Padilla* Court announced a new rule of criminal procedure concerning claims of ineffective assistance of counsel, rendering it inapplicable to cases, like Petitioner's, that are on collateral review of a final judgment. Petitioner counters that he is entitled to have the holding of *Padilla* apply to his conviction, thereby dictating the conclusion that his defense counsel, in failing to apprise him of the immigration consequences of his guilty plea, was constitutionally ineffective.

To resolve the debate and determine ultimately whether the postconviction court was legally correct in deciding that Peti-

---

**5.** There is no doubt that *Padilla* applies not only to all future cases but also to those cases that, on the date of the *Padilla* decision, were pending either in the trial court or on direct appeal. *See Griffith v. Kentucky*, 479 U.S. 314, 323, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ("As a practical matter ... we cannot hear each case pending on direct review and apply the new rule. But we fulfill our judicial responsibility by instructing the lower courts to apply the new rule retroactively to cases not yet final."). *See also State v. Daughtry*, 419 Md. 35, 77 n. 26, 18 A.3d 60, 85 n. 26 (2011) ("Even when applying a holding prospectively only ... [that] prospective application of a holding applies also to all other pending cases where the relevant question has been preserved for appellate review." (internal quotation marks omitted)).

tioner satisfied the performance prong of *Strickland*, we must examine *Padilla.*

### III.

*Padilla*, which, as we have noted, was decided two days after the Court of Special Appeals issued its opinion in this case, goes to the core of Petitioner's claim of ineffective assistance of counsel. Padilla's conviction of transporting a large amount of marijuana was based on a guilty plea. 559 U.S. at ——, 130 S.Ct. at 1477. As a result of that conviction, Padilla faced automatic deportation under federal immigration law. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (2006). He sought post-conviction relief on the ground that his trial counsel affirmatively misadvised him that "he did not have to worry about immigration status since he had been in the country so long." 559 U.S. at ——, 130 S.Ct. at 1478 (citation and quotation marks omitted). The Supreme Court of Kentucky assumed the truth of the allegations and denied relief, holding that "the Sixth Amendment's guarantee of effective assistance of counsel does not protect a criminal defendant from erroneous advice about deportation because it is merely a 'collateral' consequence of his conviction." *Id.* at ——, 130 S.Ct. at 1478 (citation omitted).

The Supreme Court issued a writ of certiorari "to decide whether, as a matter of federal law, Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from this country." *Id.* at ——, 130 S.Ct. at 1478. The Court answered "yes" to that question, stating: "We agree with Padilla that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." *Id.* at ——, 130 S.Ct. at 1478.

The Court began its analysis with the recognition that
> [t]he landscape of federal immigration law has changed dramatically over the last 90 years. While once there was only a narrow class of deportable offenses and judges wielded broad discretionary authority to prevent deporta-

tion, immigration reforms over time have expanded the class of deportable offenses and limited the authority of judges to alleviate the harsh consequences of deportation. The drastic measure of deportation or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes.

*Id.* at ——, 130 S.Ct. at 1478 (citation and quotation marks omitted).

The Court traced the evolution of this country's immigration law from its earliest iteration in the 17th century through the 1996 amendments to the immigration statutes, *see generally* The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 (effective April 1, 1997) (amending various sections of 8 and 18 U.S.C.) (hereafter "IIRAIRA"). 559 U.S. at ——, 130 S.Ct. at 1478–80. The *Padilla* Court found that, unlike in earlier times, when the law had a more limited class of deportable offenses and greater authority for the exercise of discretion by courts not to order deportation,

> [u]nder contemporary law, if a noncitizen has committed a removable offense after the 1996 effective date of these amendments, his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses. See 8 U.S.C. § 1229b.

*    *    *

> These changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for noncitizens accused of crimes has never been more important. These changes confirm our view that, as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.

559 U.S. at ——, 130 S.Ct. at 1480 (footnotes omitted). In that same vein, the Court added:

We have long recognized that deportation is a particularly severe "penalty" but it is not, in a strict sense, a criminal sanction. Although removal proceedings are civil in nature, deportation is nevertheless intimately related to the criminal process. Our law has enmeshed criminal convictions and the penalty of deportation for nearly a century. And, importantly, recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders. Thus, we find it "most difficult" to divorce the penalty from the conviction in the deportation context. Moreover, we are quite confident that noncitizen defendants facing a risk of deportation for a particular offense find it even more difficult.

*Id.* at ——, 130 S.Ct. at 1481 (citations omitted).

For these reasons, the *Padilla* Court rejected the argument that criminal defense attorneys need not warn their clients about deportation risks because deportation is a " 'collateral consequence' " of a criminal conviction and is therefore "outside the scope of representation required by the Sixth Amendment." *Id.* at ——, 130 S.Ct. at 1481 (citation and internal quotation marks omitted). The Court pointed out that it has "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland.*" *Id.* at ——, 130 S.Ct. at 1481 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). And though the Court declined to address whether a distinction between collateral and direct consequences ever is appropriate in a *Strickland* analysis, the Court made clear that such a distinction is "ill-suited" to determining a claim relating to possible deportation consequences. *Id.* at ——, 130 S.Ct. at 1482. The Court explained: "Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence." *Id.* at ——, 130 S.Ct. at 1482. The Court therefore concluded "that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel.

*Strickland* applies to Padilla's claim." *Id.* at ——, 130 S.Ct. at 1482.

Turning then, to *Strickland,* the Court observed that "[t]he first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* at ——, 130 S.Ct. at 1482 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). Such professional norms, the *Padilla* Court recognized, "as reflected in American Bar Association standards and the like[,] . . . are guides to determining what is reasonable." *Id.* at ——, 130 S.Ct. at 1482 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052; other citations omitted). The Court observed: "The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at ——, 130 S.Ct. at 1482. (citations omitted). The Court noted, in particular: "[A]uthorities of every stripe—including the American Bar Association, criminal defense and public defender organizations, authoritative treatises, and state and city bar publications—universally require defense attorneys to advise as to the risk of deportation consequences for non-citizen clients. . . ."[6] *Id.* at ——, 130 S.Ct. at 1482 (quotation marks

---

6.  *See, e.g.,* ABA Standards for Criminal Justice, Prosecution Function and Defense Function (3d ed. 1993), Standard 4–4.1(a) ("Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction."); *id.* at Standard 4–4.1(a), cmt. at 183 (stating that, "without adequate investigation the lawyer is not in a position . . . to conduct plea discussions effectively," and "[f]ailure to make adequate pretrial investigation and preparation may also be grounds for finding ineffective assistance of counsel"); *id.* at Standard 4–5.1(a) ("After informing himself or herself fully on the facts and the law, defense counsel should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome."); ABA Standards for Criminal Justice, Pleas of Guilty (3d ed. 1993), Standard 14–3.2(f), cmt. at 126–27 ("[D]efense counsel should be active, rather than passive, taking the initiative to learn about rules in this area rather than waiting for questions from the defendant, who will frequently have little appreciation of the full range of consequences that may follow from a guilty,

and citation omitted). The Court also noted its own previous statements on the subject. *Id.* at ——, 130 S.Ct. at 1483 ("We too have previously recognized that '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" (quoting *INS v. St. Cyr,* 533 U.S. 289, 322, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (citations and internal quotation marks omitted))); *Id.* at ——, 130 S.Ct. at 1482 ("'[P]reserving the possibility of' discretionary relief from deportation ... 'would have been one of the principle benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.'" (quoting *St. Cyr,* 533 U.S. at 323, 121 S.Ct. 2271 (citations omitted))); *Id.* at ——, 130 S.Ct. at 1482 ("We expected that counsel who were unaware of the discretionary relief measures would 'follo[w] the advice of numerous practice guides' to advise themselves of the importance of this particular form of discretionary relief." (quoting *St. Cyr,* 533 U.S. at 323 n. 50, 121 S.Ct. 2271)).

From all of the above, the Court concluded that "[t]he consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." *Id.* at ——, 130 S.Ct. at 1483. The Court recognized, though, that "[i]mmigration law can be complex" and

> [t]here will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward ... a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse

nolo or *Alford* plea. Further, counsel should interview the client ... given the client's particular personal circumstance and the charges the client faces."). *See also* National Legal Aid and Defender Ass'n, Performance Guidelines for Criminal Defense Representation (1995) § 2.2(b)(2)(A) (stating that during the initial interview counsel should acquire information about matters including the client's immigration status).

immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id.* at ——, 130 S.Ct. at 1483 (footnote omitted).

The Court rejected the argument of the United States Solicitor General (who argued as amicus in support of Respondent, the State of Kentucky), that Padilla's trial counsel's performance was deficient only to the extent that he gave *misadvice* about the immigration consequences of a plea. The Court found "no relevant difference 'between an act of commission and an act of omission' in this context[,]" because "[s]ilence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of 'the advantages and disadvantages of a plea agreement.' " *Id.* at ——, 130 S.Ct. at 1484 (citations omitted). The Court added that limiting the focus of an ineffectiveness claim to misadvice would give defense counsel incentive to remain silent while also "deny[ing] a class of clients least able to represent themselves the most rudimentary advice on deportation even when it is readily available." *Id.* at ——, 130 S.Ct. at 1484. The *Padilla* Court held: "It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.' " *Id.* at ——, 130 S.Ct. at 1484 (quoting *Hill,* 474 U.S. at 62, 106 S.Ct. 366 (White, J., concurring)).

The *Padilla* Court was unable to address the "prejudice" prong of *Strickland* because the lower courts, having decided (wrongly, as it developed) that deportation is merely a collateral consequence of a guilty plea and is not subject to *Strickland,* did not address whether Petitioner was prejudiced by his trial counsel's misadvice. *Id.* at ——, 130 S.Ct. at 1487. The *Padilla* Court therefore remanded the case for a finding on whether Padilla had been prejudiced as the result of his counsel's ineffective representation. *Id.* at ——, 130 S.Ct. at 1487.

## IV.

*Padilla* issued on March 31, 2010, long after Petitioner's conviction became final. The question, then, is whether the holding in *Padilla* applies on collateral review of Petitioner's conviction.

■ Under Maryland law,

the question of whether a particular judicial decision should be applied prospectively or retroactively, depends in the first instance on whether or not the decision overrules prior law and declares a new principle of law. If a decision does not, . . . no question of a "prospective only" application arises; the decision applies retroactively in the same manner as most court decisions.

*State v. Daughtry,* 419 Md. 35, 78, 18 A.3d 60, 86 (2011) (quoting *Houghton v. County Comm'rs of Kent County,* 307 Md. 216, 220, 513 A.2d 291, 293 (1986)); *see Walker v. State,* 343 Md. 629, 637, 684 A.2d 429, 433 (1996). Of particular relevance to this case, we have explained that, "where a decision has applied settled precedent to new and different factual situations, the decision always applies retroactively[,]" and it is only "where a new rule . . . constitutes 'a clear break with the past . . .'" that the question of prospective only application arises. *Potts v. State,* 300 Md. 567, 577, 479 A.2d 1335, 1340 (1984) (quoting *United States v. Johnson,* 457 U.S. 537, 549, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)); *accord Warrick v. State,* 108 Md.App. 108, 113, 671 A.2d 51, 53 ("The general rule of retroactivity *vel non* can be stated simply—if the subject case merely applies settled precedents to new facts, the case is given retroactive effect, for the case is viewed as not changing the law in any material way."), *cert. granted but dismissed at request of party,* 342 Md. 507, 677 A.2d 583 (1996).

■ We conclude, for the reasons that follow, that the holding of *Padilla,* i.e., that the failure of defense counsel to advise his or her client of the potential immigration consequence of a guilty plea is deficient performance under *Strickland,* applies retroactively to all cases arising out of convic-

tions based on guilty pleas that occurred after April 1, 1997, the effective date of the enactment of the IIRAIRA.

Since *Padilla* was decided, a number of reported state and federal appellate decisions have addressed whether *Padilla* should be applied retroactively. Although the decisions are not uniform in holding that *Padilla* applies retroactively, we are persuaded that those that so hold represent the better reasoned view.[7]

In *United States v. Orocio,* the Third Circuit concluded, based on *Strickland* and *Hill,* that "*Padilla* followed from the clearly established principles of the guarantee of effective assistance of counsel." 645 F.3d 630, 639 (3d Cir.2011). The court elaborated: "[A] court's disposition of each individual factual scenario arising under the long-established *Strickland* standard is not in each instance a 'new rule,' but rather a new application of an 'old rule' in a manner dictated by precedent. *Padilla* is no different." *Id. Padilla,* in other words, merely followed existing precedent, rather than departed from it, and thereby did not establish any new rule of prospective application only.

Likewise, in *Commonwealth v. Clarke,* the Massachusetts Supreme Judicial Court held that *Padilla* did not announce a "new rule" and therefore the *Padilla* holding must be applied retroactively to cases on collateral review. 460 Mass. 30, 949 N.E.2d 892, 904 (2011). Citing the excerpt from Justice Kennedy's concurring opinion in *Wright v. West,* 505 U.S. 277, 308–09, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (and quoted by the Court in *Williams v. Taylor,* 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)), the *Clarke* Court, like the Third

---

7. Our research discloses several reported appellate court decisions holding that *Padilla* does not have retroactive application. *E.g., United States v. Chang Hong,* No. 10–6294, —— F.3d ——, 2011 WL 3805763 (10th Cir., Aug. 30, 2011), *Chaidez v. United States,* 655 F.3d 684 (7th Cir.2011), *Barrios–Cruz v. State,* 63 So.3d 868 (Fla.Dist.Ct.App.2011), *Gomez v. State,* No. E2010–01319–CCA–R3–PC, 2011 WL 1797305, 2011 Tenn.Crim.App. LEXIS 339 (Tenn.Crim.App., May 12, 2011), as well as a decision of our own Court of Special Appeals, *Miller v. State,* 196 Md.App. 658, 11 A.3d 340 (2010).

Circuit, explained that "it may be harder to find a 'new rule' in a case where the existing precedent established a general standard that can only be applied after analysis of the facts of a given case[.]" 949 N.E.2d at 898. The *Clarke* Court determined that the two-part *Strickland* test provides such a "general standard" for ineffective assistance of counsel claims and, therefore, "such claims present the sort of case-by-case application of a general standard that will rarely create a 'new rule.'" *Id.* at 900. *Accord People v. Gutierrez*, 2011 IL App (1st) 093499, 352 Ill.Dec. 505, 517, 954 N.E.2d 365, 377 (2011) (applying the *Teague* test and stating: "[T]he *Padilla* Court simply expanded *Strickland* to include counsel's obligation to inform a defendant of possible deportation consequences. A decision that applies an established general rule (*Strickland*) to a new set of facts (deportation) is not a new rule."); *see also Ex parte Tanklevskaya*, No. 01–10–00627–CR, —— S.W.3d ——, —— – ——, 2011 WL 2132722, at *5–6 (Tex.App. Houston–1st Dist., May 26, 2011) (acknowledging that *Padilla* overturned a substantial amount of Federal Circuit authority, but concluding nonetheless that *Padilla* was not a new rule because "the determination of whether a new rule [is] created is 'objective' and the 'mere existence of conflicting authority does not necessarily mean a rule is new'" (citations omitted)). One other court has noted that *Padilla* was reasoned like "most" *Strickland* cases, stating: "[T]he Supreme Court merely cited to professional standards and expectations and identified competent counsel's duty in accordance thereof." *Tanklevskaya*, —— S.W.3d at ——, 2011 WL 2132722, at *6 (citations omitted).[8]

---

8. All of these courts used the retroactivity analysis set forth in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See United States v. Orocio*, 645 F.3d 630, 639 (3d Cir.2011); *Commonwealth v. Clarke*, 460 Mass. 30, 949 N.E.2d 892, 897 (2011); *People v. Gutierrez*, 2011 IL App (1st) 093499, 352 Ill.Dec. 505, 954 N.E.2d 365, 376–79 (2011); *Ex parte Tanklevskaya*, No. 01–10–00627–CR, —— S.W.3d ——, —— – ——, 2011 WL 2132722, at *5–7 (Tex.App. Houston–1st Dist., May 26, 2011). Maryland has not adopted *Teague*, nor must it. *See Danforth v. Minnesota*, 552 U.S. 264, 282, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008) (stating that *Teague* "does not in any way limit

We agree with our sister courts in the Third Circuit, Massachusetts, Illinois, Minnesota, and Texas that *Strickland* set forth a general standard for application to a specific set of facts; that decisions applying the *Strickland* standard do not establish a rule of prospective application only; and that *Padilla* is an application of *Strickland* to a specific set of facts. *Padilla*, decided on March 31, 2010, instructs that, "[f]or at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." 559 U.S. at ——, 130 S.Ct. at 1485. That 15–year span approximately matches the time period following the 1996 amendments to federal immigration law that made deportation "practically inevitable" for noncitizens convicted of removable offenses. *Id.* at ——, 130 S.Ct. at 1480 (citing 8 U.S.C. § 1229b). The *Padilla* Court explained that those changes to immigration law "dramatically raised the stakes of a noncitizen's criminal conviction[,]" and, as a result, "[t]he importance of accurate legal advice for noncitizens accused of crimes has never been more important." *Id.* at ——, 130 S.Ct. at 1480. Likewise, all but one of the sources cited by the Court in determining the "weight of prevailing professional norms" were published in 1995 or later, i.e., within the 15 years preceding the Court's decision in *Padilla*.

We therefore need look no further than *Padilla* itself to ascertain what has been expected of defense counsel under the Sixth Amendment, in connection with advice concerning the immigration consequences of a guilty plea, at least since the 1996 amendments to federal immigration law. Stated differently, the holding of *Padilla* did not "overrule[ ] prior law and declare[ ] a new principle of law." *Daughtry*, 419 Md. at 78,

---

the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is declared 'nonretroactive' under *Teague*."). Thus, even if the Supreme Court ever were to hold that *Padilla* is not retroactive under *Teague*, that holding would have no adverse effect on our analysis here. Indeed, we cite and discuss these cases because we find persuasive, and subscribe to, the analysis these courts gave to the *Padilla* decision.

18 A.3d at 86 (internal citations omitted). Rather, *Padilla* applied "settled precedent [i.e., *Strickland* ] to [a] new and different factual situation[ ]," and, therefore, that decision "applies retroactively." *Potts,* 300 Md. at 577, 479 A.2d at 1341.

Consequently, under Maryland retroactivity jurisprudence, *Padilla* is retroactively applicable to convictions, like Petitioner's, that are based on guilty pleas that came after the effective date of the 1996 changes to the immigration laws. Because, under *Padilla,* Petitioner's trial counsel was obligated, but failed, to provide advice on the deportation consequences of Petitioner's plea, we hold that Petitioner's trial counsel's performance was constitutionally deficient.

Much of what we have said disposes of the remainder of the State's arguments for why *Padilla* does not apply to Petitioner's case. The State argues that *Padilla* does not apply because Padilla received misadvice and Petitioner received no advice. True, Petitioner's counsel did not advise him of the possible immigration consequences of the guilty plea. But, as we have detailed, the *Padilla* Court adamantly rejected the Solicitor General's attempt to draw the distinction, for purposes of the Sixth Amendment right to counsel, between no advice and incorrect advice concerning immigration consequences. *See Padilla,* 559 U.S. at ——, 130 S.Ct. at 1484–85.

The State also argues that we should affirm the Court of Special Appeals' reversal of the postconviction court's finding of deficient performance, because the Court of Special Appeals' analysis "is in accord with the controlling authority at the time of [Petitioner's] plea." The State points out in its brief that the Court of Special Appeals, in applying the *Strickland* analysis,

> thoroughly addressed the long-recognized distinctions between collateral and direct consequences of criminal convictions . . . [and] concluded, based on "the dispositive distinction made by the caselaw," that potential deportation is a collateral consequence which, unlike a direct consequence, is

not a matter as to which a defendant must be advised before pleading guilty.

The State, relying on language from *Strickland* concerning the performance prong of the analysis, notes that "a reviewing court 'must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct* [,]'" and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052) (emphasis added by the State).

This argument, like the others the State advances, fails under the Court's reasoning in *Padilla.* The *Padilla* Court applied the same *Strickland* analysis to a set of facts materially identical to Petitioner's. The *Padilla* Court recognized that many courts, prior to *Padilla,* drew a distinction between direct and collateral consequences of a guilty plea and, treating deportation consequences as "collateral," held that counsel's failure to inform the client about such consequences was beyond the scope of what is required under the Sixth Amendment. Yet, notwithstanding prior caselaw, the *Padilla* Court had no apparent difficulty concluding that "[t]he collateral versus direct distinction is . . . ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation[,]" and therefore, "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel. *Strickland* applies to Padilla's claim." 559 U.S. at ——, 130 S.Ct. at 1482. In essence, the *Padilla* Court's decision is a recognition and correction of an error on the part of many courts that for many years had prevented them from applying the *Strickland* analysis to factual situations like those presented in *Padilla's,* and Petitioner's, cases.

Furthermore, Petitioner's guilty plea, like *Padilla's,* postdated the enactment of the IIRAIRA when, as the *Padilla* Court made plain, the prevailing professional norms dictated that defense counsel advise their clients of the immigration

consequences of the plea. *Id.* at ——, 130 S.Ct. at 1485. Petitioner's counsel was charged, just as was counsel for Padilla, with adherence to the same then-prevailing professional norms of which the *Padilla* Court spoke.[9]

For all these reasons, we reject the State's contentions and hold that *Padilla* governs Petitioner's case.

---

**9.** We have explained why counsel's failure to advise Petitioner of the immigration consequences of the plea was deficient performance, under *Strickland* and *Padilla*. We also note (though we do not ground our decision on this point) that Petitioner's counsel should also have known, when advising Petitioner about the plea, of the requirements of Maryland Rule 4–242. At the time of Petitioner's plea, Rule 4–242 provided in pertinent part that,

[b]efore the court accepts a plea of guilty or nolo contendere, the court, the State's Attorney, the attorney for the defendant, or any combination thereof shall advise the defendant (1) that by entering the plea, if the defendant is not a United States citizen, the defendant may face additional consequences of deportation, detention, or ineligibility for citizenship and (2) that the defendant should consult with defense counsel if the defendant is represented and needs additional information concerning the potential consequences of the plea. The omission of advice concerning the collateral consequences of a plea does not itself mandate that the plea be declared invalid.

Md. Rule 4–242(e) (2006).

By its plain language, Rule 4–242(e) mandates that defense counsel, among others (the court and State's Attorney), ensure an on-the-record advisement of the immigration consequences of the plea. The Rule mandates the advice, and it charges defense counsel with the obligation, if not to advise the client himself directly on the record, then, at a minimum, to ensure that the advice is given, on the record.

Furthermore, as Petitioner points out, the minutes of the April 24, 1998, meeting of the Court of Appeals Standing Committee on Rules of Practice and Procedure reflect the intention of the drafters of Rule 4–242(e) to permit collateral challenges, based on ineffective assistance of counsel, to a plea that did not include on-the-record advice concerning immigration consequences:

The Vice Chair expressed her disagreement with the fact that if a judge fails to advise the defendant about the consequences of a guilty plea, no remedy exists, even if that defendant suffers dire consequences. Some other states provide that if the advice is not given, the plea can be invalidated. The Chair pointed out that there are two aspects to this. One is that the defendant can get postconviction relief based on inadequate advice of counsel. The Rule says that the guilty plea cannot be attacked, but does not preclude postconviction relief. U.S. citizens may not ask for their pleas to be set aside because the judge did not give the advice about immigration consequences. If a particular defendant is unfairly prejudiced, that defendant's right to competent defense counsel should cover this situation.

## V.

We have determined so far that, by application of *Padilla,* Petitioner's counsel's performance was deficient because it fell below the standard of prevailing professional norms. That, however, resolves only the first of the two prongs of the *Strickland* test. It remains for us to determine whether Petitioner has established that he was prejudiced, in the *Strickland* sense, as the result of defense counsel's deficient performance. We turn now to that inquiry.

To show prejudice, *Strickland* requires that a defendant demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The Supreme Court instructed in *Hill* that, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59, 106 S.Ct. 366. *See also Padilla,* 559 U.S. at ——, 130 S.Ct. at 1485 (instructing that, "to obtain relief on [an ineffective assistance of counsel] claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"). This Court has interpreted the "reasonable probability" language of *Strickland* to mean a "substantial possibility" that the result of the trial would have been different. *See Williams v. State,* 326 Md. 367, 375–76, 605 A.2d 103, 107 (1992).

In *Hill,* the defendant entered a guilty plea and later sought federal habeas relief on the ground that his defense counsel provided erroneous information about his eligibility for parole under the sentence agreed upon as part of the plea. The Supreme Court found no prejudice for purposes of *Strickland,* because the defendant "did not allege in his habeas petition that, had counsel correctly informed him about his parole

eligibility date, he would have pleaded not guilty and insisted on going to trial." *Hill,* 474 U.S. at 60, 106 S.Ct. 366.

Unlike in *Hill,* Petitioner expressly alleged that he would not have entered the guilty plea had he been advised of the deportation risk of doing so. In his affidavit to the postconviction court, Petitioner wrote:

> Had I been aware of the ... immigration consequences I now face, including an order or [sic] deportation, I never would have proceeded in the manner I did, rather, I would have exercised my right to a court or jury trial and any other right or defense which would have prevented the entry of a conviction for a deportable offense.

The State did not challenge the affidavit, nor did it argue that the affidavit was insufficient, even if credited fully, to establish the prejudice required by *Strickland* and *Hill.*

We are bound to credit a postconviction court's first-level findings, including findings concerning the sworn testimony of a defendant concerning whether he or she would have entered into a plea if defense counsel had performed competently in connection with the plea. *Yoswick,* 347 Md. 228, 700 A.2d 251, provides an example. In that case, Yoswick, after pleading guilty to attempted first degree murder and kidnaping, sought postconviction relief by asserting that he received ineffective assistance of counsel because counsel erroneously advised him regarding the requirements for parole. At a postconviction hearing, the defendant testified that, had he been correctly advised regarding parole, he would not have entered the guilty plea. The postconviction court did not find the defendant credible: "Simply stated, the Court does not believe Petitioner's self-serving statement that he would not have pled guilty had he known the actual date for parole eligibility." *Id.* at 237, 700 A.2d at 255. This Court affirmed the postconviction court, holding that the defendant had failed to satisfy *Strickland's* prejudice requirement. Deferring to the trial court's finding, the *Yoswick* Court stated: "[T]he trial court simply did not believe him and we cannot say that credibility determination was clearly erroneous." *Id.* at 246, 700 A.2d at 260.

In the case at bar, the postconviction court expressly credited Petitioner's uncontroverted, sworn averment that, had defense counsel advised him of the plea consequence of deportation, he would not have entered into the plea. We must accept that fact, as not clearly erroneous. Our colleagues on the Court of Special Appeals viewed the postconviction court's finding much the same way. *See Denisyuk*, 191 Md.App. at 425–26, 991 A.2d at 1285 ("[W]e would probably have been highly skeptical about [the Petitioner's] *pro forma* representation, even if uncontroverted, were the matter before us. That is not, however, our prerogative. We were not fact finders, and we have no choice but to accept the facts as properly found by the fact-finding judge.").[10]

The State, seemingly ignoring that the postconviction court expressly credited Petitioner's averment, argues that "[t]he multiple charges that [Petitioner] was facing, the overwhelming evidence against him, and the leniency afforded [Petitioner] as a result of his negotiated plea arrangement refute his contention ... that he was prejudiced by counsel's representation." By citing the "multiple charges" facing Petitioner and "leniency" offered him, the State appears to assume that Petitioner must have considered conviction of fewer charges and a relatively short period of incarceration to be his top priorities when he entered the plea.

---

**10.** The fact that the postconviction court made the express finding that Petitioner was prejudiced by his counsel's deficient performance provides one of two reasons why we decline the State's request that, if we hold that defense counsel's performance satisfies the first prong of *Strickland* (as we have done), then we should direct a remand to the postconviction court for further proceedings at which the State is given an opportunity to present evidence and argument concerning whether Petitioner was prejudiced. The additional reason why we decline to remand this case is that the State had the opportunity to present its own evidence that might have shed light on the credibility of Petitioner's sworn statement; the State did not opt to do so. The State could have argued the weight to be given to Petitioner's sworn statement; the State did not do that either. The State left the postconviction court with the decision whether to credit Petitioner's sworn statement, on its face, and the court exercised its right to do so. The State is not entitled to the proverbial "second bite of the apple."

The State's assumption does not hold up in the face of what the Supreme Court recognized in *Padilla*, and we endorse here: "[P]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." 559 U.S. at ——, 130 S.Ct. at 1483 (quoting *St. Cyr*, 533 U.S. at 322, 121 S.Ct. 2271). Petitioner swore that, had he been given the choice, he would have gone to trial. The postconviction court obviously took Petitioner at his word. From that we must conclude that, had Petitioner been advised of the deportation risks of his plea, he would have run the risk of significant jail time, rather than the near certainty of deportation.

Our conclusion in this regard is far from fanciful. We are not alone in understanding that many noncitizens might reasonably choose the possibility of avoiding deportation combined with the risk of a greater sentence over assured deportation combined with a lesser sentence. *See Orocio*, 645 F.3d at 645 ("For the alien defendant most concerned with remaining in the United States, especially a legal permanent resident, it is not at all unreasonable to go to trial and risk a ten-year sentence and guaranteed removal, but with the chance of acquittal and the right to remain in the United States, instead of pleading guilty to an offense that, while not an aggravated felony, carries 'presumptively mandatory' removal consequences."); *see also Padilla*, 559 U.S. at ——, 130 S.Ct. at 1480 ("deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.") (footnote omitted).

Insofar as the State refers to the "overwhelming evidence" against Petitioner to suggest that a conviction was inevitable and therefore no prejudice existed, the State misunderstands the focus of the prejudice inquiry in cases involving plea agreements. The appropriate determination is not whether Petitioner ultimately would have been convicted following a trial, but rather whether there "is a reasonable probability that, but for counsel's errors, [Petitioner] *would not have pleaded guilty and would have insisted on going to trial.*"

*Hill,* 474 U.S. at 59, 106 S.Ct. 366 (emphasis added); *see also Premo,* 562 U.S. at ——, 131 S.Ct. at 744 (explaining that the prejudice inquiry "is whether [the defendant] established the reasonable probability that he would not have entered his plea but for his counsel's deficiency ..."); *see also Orocio,* 645 F.3d at 645 (noting that the threat of removal provides a "powerful incentive to go to trial if the plea would result in removal anyway" and, given his relatively young age at the time of the plea agreement, Orocio "rationally could have been more concerned about a near-certainty of multiple decades of banishment from the United States than the possibility of a single decade in prison").

For all of the reasons we have discussed, Petitioner's sworn statement that he would have opted to go to trial if he had known of the likelihood of deportation, which was credited by the court, established a "substantial possibility" that, had he received the advice required by *Padilla,* he would have opted to go to trial. *Cf. Williams,* 326 Md. at 382, 605 A.2d at 110 (1992) (concluding that the petitioner's after-the-fact-statement "that had he been told [by defense counsel] of the possible mandatory sentence, he would have accepted the plea" was enough to allow the inference that the petitioner " 'may well' have opted to accept the plea agreement, [thereby creating] at least a 'substantial possibility' that the outcome would have been different"). We hold, based on this factual record, that Petitioner satisfied his obligation under *Strickland* and *Hill* to prove that he was prejudiced as the result of his counsel's deficient performance.

## VI.

In conclusion, Petitioner has satisfied both prongs of the *Strickland* test for constitutionally ineffective assistance of counsel. Consequently, the postconviction court correctly granted Petitioner the relief of a new trial. We must reverse the Court of Special Appeals' holding to the contrary, and remand the case to that Court with the direction to affirm the judgment of the Circuit Court for Harford County.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH DIRECTION TO AFFIRM THE ORDER OF THE CIRCUIT COURT FOR HARFORD COUNTY GRANTING PETITIONER A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY HARFORD COUNTY.

BATTAGLIA, MURPHY and ADKINS, JJ., dissent.

BATTAGLIA, J., dissenting, in which MURPHY, J., joins.

I agree with the majority on the application of *Padilla v. Kentucky,* —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), to the instant case; I disagree with the majority's mandate vacating the guilty plea and ordering a new trial merely on a recitation by Denisyuk that

[h]ad I been aware of the aforementioned immigration consequences I now face, including an order or deportation, I never would have proceeded in the manner I did, rather, I would have exercised my right to a court or jury trial and any other right or defense which would have prevented the entry of a conviction for a deportable offense.

In essence, the result of the majority's decision is that a self-serving declaration suffices to vacate a guilty plea. I would prefer that the trial court be instructed with this opinion, when faced with post-conviction allegations pursuant to *Padilla,* as here, to conduct an evidentiary hearing, beyond the admission of an affidavit, to determine whether an alien's decision to reject a plea offer and proceed to trial "would have been rational under the circumstances." —— U.S. at ——, 130 S.Ct. at 1485, 176 L.Ed.2d at 297.

Other courts addressing post-*Padilla* claims have rejected similar self-serving affidavits as sufficient *per se* to establish prejudice. *See United States v. Viera,* 2011 WL 3420842, at *3, 2011 U.S. Dist. LEXIS 86290, at *8-9 (D.Kan.2011) (explaining that Viera's conclusory *Padilla* claim, even if "supported by his sworn statement, is insufficient to show that 'a decision to reject the plea bargain would have been rational

under the circumstances' ''); *United States v. Diaz–Palmerin,* 2011 WL 1337326, at \*5, 2011 U.S. Dist. LEXIS 37151, at \*15 (N.D.Ill.2011) (concluding that Diaz–Palmerin's "self-serving statement that he would have rejected the plea agreement [did] not suffice to establish that the result of the proceedings would have been different if [he] were aware of the potential immigration consequences").

Rather, some of the factors about which a trial court should be concerned include an individual's prior criminal history—in the present case, there are allusions to pending violations of probations for criminal offenses that have not been explored. The presence of other criminal offenses may have affected Denisyuk's alien status with respect to deportation. *See People v. Bevans,* 30 Misc.3d 1238(A), 926 N.Y.S.2d 345, 2011 N.Y. Slip Op. 50395(U), at \*15–16, 2011 WL 923077 (N.Y. Kent County 2011) (concluding that there was "no reasonable probability that Defendant would have insisted on a trial under a totality of the circumstances" where he was already "at risk of deportation," in part, because "he was previously convicted of a more serious criminal charge in another criminal proceeding prior to the time he pled guilty in the instant case").

Whether an individual is documented also may be a relevant consideration. *See Zapata–Banda v. United States,* 2011 WL 1113586, at \*11, 2011 U.S. Dist. LEXIS 36739, at \*39–40 (S.D.Tex.2011) (explaining that, because Zapata–Banda had "never been a lawful permanent resident of the United States," the "immigration consequence of Zapata's guilty plea is not that he lost the right to be in the United States, but instead, that he lost the right to apply to be in the United States"). There is nothing in the record to reflect Denisyuk's status apart from his affidavit, which states only that he "was not a United States citizen."

Other relevant factors may include the strength of the prosecution's case. *See Santos–Sanchez v. United States,* 2011 WL 3793691, at \*12, 2011 U.S. Dist. LEXIS 95442, at \*39 (S.D.Tex.2011) (expressing doubt that Santos–Sanchez would have rejected the plea and gone to trial where "reality is

combined with the straight-forward facts of the case, it appears that a conviction at trial was very probable," and even if not convicted, Santos–Sanchez may still have been deported under the immigration court's less-exacting evidentiary burden). Conversely, the trial court may consider the presence of a viable defense as indicative of prejudice. *See Zapata–Banda,* 2011 WL 1113586, at *10–11, 2011 U.S. Dist. LEXIS 36739, at *35–37 (after Zapata–Banda failed to articulate a believable defense, the court remained "completely unconvinced" that his trial strategy "would have had any impact on his proceedings").

Whether the benefit obtained from the guilty plea was substantial also has been a frequent consideration among trial courts. *See Zapata–Banda,* 2011 WL 1113586, at *11, 2011 U.S. Dist. LEXIS 36739, at *39–40 (concluding, in part, that because Zapata–Banda did not lose his right to be in the United States because of the guilty plea at issue, he was not prejudiced by his counsel's failure to advise him of deportation consequences). Curative judicial admonishments also may be relevant considerations, although admittedly, in the present case, none occurred. *See Khanali v. United States,* 2011 WL 1626553, at *4, 2011 U.S. Dist. LEXIS 45751, at *14 (S.D.Ga. 2011) (finding no prejudice where trial judge explicitly advised Khanali at plea hearing that "the maximum penalty could include deportation"); *see also Ellington v. United States,* 2010 WL 1631497, at *3, 2010 U.S. Dist. LEXIS 38943, at *9–10 (S.D.N.Y.2010) (concluding that Ellington failed to establish prejudice where, after court asked whether he recognized that his "plea of guilty to the offense outlined in the indictment" affected his "ability to remain within the United States," Ellington answered "[y]es, sir"). Any other objective indicia that rejecting the plea and proceeding to trial would have been rational also may be the subject of an evidentiary hearing, such as the length of time Denisyuk has lived in the United States, whether Denisyuk has family in the United States, the connections Denisyuk has to his home country, and evidence that Denisyuk knew, or did not know, of the deportation consequences of a conviction. *See United States v. Dass,* 2011

WL 2746181, at *5–6, 2011 U.S. Dist. LEXIS 76506, at *16–17 (D.Minn.2011) (concluding that Dass established prejudice where it was shown that (1) he had family ties in Minnesota, lacked connections to his home country of Guyana, (2) he came to the United States while still an infant and spent his entire life in Canada and the United States, (3) he had at least four children of his own, and (4) his current partner had a five-year old daughter of her own in Minnesota); *see also People v. Williams,* 72 A.D.3d 1347, 1348, 899 N.Y.2d 438, 439 (N.Y.App. Div.2010) (crediting Williams's girlfriend's testimony that "she was present on at least four occasions when defense counsel stated that defendant would not be exposed to deportation proceedings due to his guilty plea").

If a mere self-serving recitation of a non-citizen that he would have rejected the plea had he known of the potential immigration consequences is sufficient to garner a new trial, a *Strickland* prejudice inquiry is eviscerated. Rather, in a post-conviction setting, the prejudice prong deserves more inquiry than that given here.

I respectfully dissent.

Judge MURPHY has authorized me to state that he joins this dissenting opinion.

ADKINS, J., dissenting.

I respectfully dissent because I believe the better position under Maryland law, under federal law, and in light of prudential considerations is that *Padilla v. Kentucky* created a new rule, not applicable retroactively. In my view, *Padilla* should not apply to Petitioner, and he should not receive a new trial.

It is clear that *Padilla* created a new rule under the federal standard for retroactivity.[1] In *Teague v. Lane,* the Supreme Court set forth the federal standard, holding that a rule is "new," and thus not applicable retroactively, if "the result was not dictated by precedent existing at the time the defendant's

---

1. As the majority correctly observes, we are not bound by the federal standard, but it is persuasive. Maj. Op. at 480–81, 30 A.3d at 924–25, n. 8.

conviction became final." 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989). In *Beard v. Banks*, the Court refined the *Teague* standard, holding that a rule is new whenever "reasonable jurists could differ as to whether precedent compels [it]." 542 U.S. 406, 416 n. 5, 124 S.Ct. 2504, 2513, 159 L.Ed.2d 494 (2000). Thus, the Tenth Circuit recently held that *Padilla* created a new rule because "a reasonable jurist . . . would not have considered Supreme Court precedent to compel [its result]." *U.S. v. Chang Hong*, —— F.3d ——, —— – ——, 2011 WL 3805763, at *5–7 (10th Cir.2011). The Seventh Circuit reached the same result, holding that *Padilla* created a new rule because one could not say that prior cases holding differently had been "unreasonable in their reading of existing Supreme Court precedent." *Chaidez v. U.S.*, 655 F.3d 684, 691–92 (7th Cir.2011).[2] Because *Padilla* created a new rule under the federal standard, the majority must rely on Maryland's unique standard for retroactivity, set forth in *State v. Daughtry*, 419 Md. 35, 77–81, 18 A.3d 60, 85–87 (2011), to hold that *Padilla* did not create a new rule, and thus is applicable retroactively to Petitioner.

The better position, however, is that *Padilla* creates a new rule under Maryland's standard as well as the federal standard, because the rule it overturned was more reasonable and more widely followed than the rule overturned in *Daughtry*. In other words, *Daughtry* is distinguishable because *Padilla* overturned stronger and better-established precedents. Unlike the rule overturned in *Daughtry*, which was followed in "some trial courts" and "seemingly . . . [mis]construed a prior case," 419 Md. at 80, 18 A.3d at 79, the rule overturned in *Padilla* was followed in "every Federal Court of Appeals," and

---

2. The only federal circuit court to apply *Padilla* retroactively failed to address the Supreme Court's later interpretations of the *Teague* standard. *See U.S. v. Orocio*, 645 F.3d 630 (3rd Cir.2011). Indeed, the only Supreme Court case cited in *Orocio* with respect to the *Teague* standard is *Wright v. West*, 505 U.S. 277, 291 n. 8, 112 S.Ct. 2482, 2490, 120 L.Ed.2d 225 (1992), which held that "a rule is 'new' for Teague purposes whenever its validity under existing precedents is subject to debate among 'reasonable minds' or among 'reasonable jurists' " (citations omitted).

provided a reasonable solution to a "uniquely difficult" question. *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 1482, 1491–92, 176 L.Ed.2d 284 (2010).

*Daughtry* affirmed a judgment from the Court of Special Appeals holding that the defendant's guilty plea was involuntary because "there was no other evidence (aside from the fact of representation) tending to show that the plea was knowingly and voluntarily entered." 419 Md. at 80, 18 A.3d at 87. On appeal before this Court, the State argued that the holding below, if affirmed, would create a new rule because it was "a significant departure from ... *Priet*," a case [3] sometimes cited as having created a presumption that guilty pleas are knowing and voluntary as long as the defendant is represented by counsel. *Id.* at 78–79, 18 A.3d at 86. We disagreed. Acknowledging that it "may well be that members of the bar and lower courts ... relied upon and employed the ... presumption in accepting or upholding guilty pleas," we held:

> "[T]hat 'some trial courts and members of the bar seemingly have [mis]construed' a prior case does not mean that a later decision, setting forth a proper interpretation, 'comprise[s] a departure from the law applicable to criminal causes in Maryland.'" .... Because our decision today is consistent entirely with Rule 4–242(c), its predecessor, and attendant case law, we need not address the parties' contentions vis á vis [retroactivity], and we declare that this opinion must be given full retrospective effect. (Citations omitted.)

*Id.* at 80–81, 18 A.3d at 87. Thus, the rule overturned in *Daughtry* was not widely accepted and was a mistaken interpretation of applicable precedent.

On the other hand, the rule overturned in *Padilla* was widely accepted and well reasoned. *Padilla* held that a criminal defense lawyer, to provide effective assistance under *Strickland*, "must inform her client whether his plea carries a risk of deportation." 130 S.Ct. at 1486. This holding overturned the rule, widely followed in the lower courts, that a

---

3. *State v. Priet*, 289 Md. 267, 424 A.2d 349 (1981).

guilty plea is not invalid under *Strickland* solely because the defense attorney failed to inform the defendant of the risk of deportation.[4]   *Id.* at 1491 (Alito, ·J., concurring).   As the Seventh Circuit explained in *Chaidez,* prior to *Padilla* "virtually all jurisdictions ... had held that defense lawyers ... need not explain collateral consequences, such as ... deportation." 655 F.3d at 690 (citation omitted).  Thus, Justice Alito's concurring opinion in *Padilla* characterized the majority's holding as a "dramatic departure from precedent" and a "major upheaval in Sixth Amendment law," observing that "the Court's view has been rejected by every Federal Court of Appeals to have considered the issue thus far."  130 S.Ct. at 1488, 1491.   Because *Padilla* overturned such a strong and widely followed precedent, the best position is that it created a new rule.  *Daughtry,* therefore, is distinguishable.

Two additional considerations counsel against the retroactive application of *Padilla.*   First, as the Supreme Court observed in *Butler v. McKellar,* "[T]he 'new rule' principle therefore validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions."  494 U.S. 407, 414, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990).[5]   I find this consideration persuasive.   To avoid implying that practically all judges and practitioners have been unreasonable in their

---

4.   Of course, this was the rule in Maryland as well.  *Yoswick v. State,* 347 Md. 228, 240, 700 A.2d 251, 257 (1997) (holding that a guilty plea is not invalid merely because the lawyer fails to advise the defendant of collateral consequences such as deportation).  Although Md. Rule 4–242(e) required defense attorneys to advise their clients of "collateral consequences" of a guilty plea, including deportation, it explicitly provided that "the omission of advice concerning the collateral consequences of a plea does not itself mandate that the plea be declared invalid."  Maryland Rule 4–242(e).  The committee note also provided that Md. Rule 4–242(e) "does not overrule *Yoswick* ...."

5.   Maryland law, too, recognizes that a holding is more likely a new rule when the precedent it overturns was widely accepted.  *See Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 471, 601 A.2d 633, 658 (1992) (holding that "two major considerations in determining whether a new holding is to be applied only prospectively are the purpose of the holding and the extent of reliance upon the overruled cases").

interpretation of *Strickland,* courts should recognize that *Padilla* created a new rule.[6]

Second, one of the reasons *Teague* created the dichotomy between new rules and old rules is that states are unduly burdened when new constitutional rules are applied retroactively. As the Court observed,

> In many ways the [retroactive] application of new rules ... may be more intrusive than the enjoining of criminal prosecutions, for it continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards. Furthermore ... [s]tate courts are understandably frustrated when they faithfully apply existing constitutional law only to have a federal court discover ... new constitutional commands.

(Citations omitted.)

*Teague,* 489 U.S. at 310, 109 S.Ct. at 1075.

I find this consideration persuasive as well. Petitioner's guilty plea complied with then-existing constitutional standards under *Strickland.* As Justice Alito noted in *Padilla,* "every Federal Court of Appeals to have considered the issue" agreed that deportation was a collateral consequence, and that failing to advise a defendant of it did not invalidate a guilty plea. 130 S.Ct. at 1488, 1491. Thus, granting Petitioner a new trial when his plea conformed with a well-established and reasonable constitutional rule imposes an undue burden on the Circuit Court.

For these reasons, I respectfully dissent.

---

**6.** Again, this consideration distinguishes *Padilla* from *Daughtry,* which overturned lower-court precedent that had "[mis]construed a prior case." 419 Md. at 80–81.